T.C. Memo. 2006-56


UNITED STATES TAX COURT


ESTATE OF CLAUDE C. FOCARDI, DECEASED,
NINA M. FOCARDI, PERSONAL REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

NINA M. FOCARDI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 1892-03, 3130-03.      Filed March 27, 2006.


Edward F. Koren and Douglas A. Wright, for petitioners.

Stephen R. Takeuchi, for respondent.


MEMORANDUM OPINION


LARO, Judge:  In docket No. 1892-03, Estate of Claude C.

Focardi, Deceased (decedent), Nina M. Focardi, Personal

Representative, petitioned the Court to redetermine respondent's

determination of deficiencies of $903,784 and $3,123 in the

estate's Federal gift tax for 1996 and 1997, respectively. In docket No. 3130-03, Nina M. Focardi (Focardi) petitioned the Court to redetermine respondent's determination of deficiencies of $824,019 and $3,123 in Focardi's Federal gift tax for 1996 and 1997, respectively. The cases resulting from these petitions were consolidated for purposes of trial, briefing, and opinion.

Following the parties' stipulation of the applicable value of the stock discussed herein[1] and the submission of these cases under Rule 122, we now decide whether the respective revocable spousal interests contained in four grantor retained annuity trusts (GRATs) are qualified interests under section 2702(b).[2] We hold they are not. We also decide whether the GRATs created annuities that are valued on the basis of their stated term of years (as opposed to annuities that are valued on the basis of the actuarial life of the particular grantor) in that the documents establishing the GRATs state that the spousal interests

_____

[1] The parties' stipulation as to the applicable value of the relevant stock resulted from their submission of that issue to binding arbitration. The arbitrator concluded that the applicable value of each share of that stock was $4.46.

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, Rule references are to the Tax Court Rules of Practice and Procedure, and references to the regulations under sec. 2702 are to those regulations before amendment by T.D. 9181, 70 Fed. Reg. 9222 (Feb. 25, 2005). The amendments to those regulations are not applicable here in that they apply to trusts created on or after July 26, 2004 (the date the amendments were published in proposed form in the Federal Register). See sec. 25.2702-7, Gift Tax Regs., as amended by T.D. 9181, supra.

are to be disregarded if they are not qualified interests, and such disregard makes each annuity one for its set term of years. We hold that the GRATs do not create annuities for their stated term of years.

## Background

### 1. Preface

All facts were set forth in stipulations or contained in the exhibits submitted therewith. We find the facts accordingly. Focardi is decedent's surviving spouse and the personal representative of his estate. When the petition was filed in docket no. 3130-03, Nina M. Focardi resided in St. Petersburg, Florida. When the petition was filed in docket No. 1892-03, the "legal address" of decedent's estate was in St. Petersburg, Florida.

### 2. Docket No. 1892-03

On October 25, 1996, decedent transferred 817,500 shares of stock of Great Bay Distributors, Inc. (Great Bay), into a trust (decedent 2-year GRAT) named "Claude C. Focardi Two Year Grantor Retained Annuity Trust". On the same day, decedent transferred 817,500 shares of Great Bay stock into a trust (decedent 4-year GRAT) named "Claude C. Focardi Four Year Grantor Retained Annuity Trust". The terms of the instruments establishing the decedent 2-year GRAT and the decedent 4-year GRAT (collectively, decedent GRATs) were identical in all material regards except for the

annuity term and the percentage used to calculate the amount of the first annuity payment.

On April 14, 1997 and 1998, decedent filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 1996 and 1997, respectively, reporting that his October 25, 1996, transfer was a gift for Federal gift tax purposes. On the 1996 return, decedent calculated the value of that gift by reducing the value of his transferred shares by the actuarially determined value of a 2-life annuity under section 7520; i.e., the present value of the annuity payable until the earlier of (1) the end of the applicable 2- or 4-year term or (2) the deaths of both decedent and Focardi. On the 1997 return, decedent reported gifts for prior periods inclusive of the taxable gifts reported on his Form 709 for 1996.

Respondent determined that decedent's gift tax for 1996 must be calculated by reducing the value of decedent's transferred shares by the value of a single-life annuity; i.e., the present value of the annuity payable until the earlier of (1) the end of the applicable 2- or 4-year period or (2) the death of decedent. Respondent also determined a gift tax deficiency for 1997 due to the increase in prior year gifts as a result of his determination for 1996.

3. <u>Docket No. 3130-03</u>

On October 25, 1996, Focardi transferred 817,500 shares of Great Bay stock into a trust (Focardi 2-year GRAT) named "Nina M. Focardi Two Year GRAT". On the same day, Focardi transferred 817,500 shares of Great Bay stock into a trust (Focardi 4-year GRAT) named "Nina M. Focardi Four Year GRAT". The terms of the instruments establishing the Focardi 2-year GRAT and the Focardi 4-year GRAT (collectively, Focardi GRATs) were identical in all material regards except for the annuity term and the percentage used to calculate the amount of the first annuity payment.

On April 14, 1997 and 1998, Focardi filed a Form 709 for 1996 and 1997, respectively, reporting that her October 25, 1996, transfer was a gift for Federal gift tax purposes. On the 1996 return, Focardi calculated the value of that gift by reducing the value of her transferred shares by the actuarially determined value of a 2-life annuity under section 7520; i.e., the present value of the annuity payable until the earlier of (1) the end of the applicable 2- or 4-year term or (2) the deaths of both decedent and Focardi. On the 1997 return, Focardi reported gifts from prior periods inclusive of the taxable gifts reported on her Form 709 for 1996.

Respondent determined that Focardi's gift tax for 1996 must be calculated by reducing the value of Focardi's transferred

shares by the value of a single-life annuity; i.e., the present value of the annuity payable until the earlier of (1) the end of the applicable 2- or 4-year term or (2) the death of Focardi. Respondent also determined a gift tax deficiency for 1997 due to the increase in prior year gifts as a result of his determination for 1996.

4. <u>Relevant Trust Provisions</u>

Each of the instruments establishing the decedent GRATs states in relevant part as follows:

> **ARTICLE FOUR: Irrevocable Provision.** This agreement and the trust it creates are irrevocable, and neither all nor part can be altered, amended, revoked, or terminated prior to the time specified in this agreement, by me, Trustee, or anyone else. * * *

> **ARTICLE FIVE: Administration of Trust Estate.** Trustee shall hold, administer, and distribute the trust estate as follows:

> **A. Annuity Term.** During the period beginning on the date of this agreement and ending on the date ["2" in the case of the decedent 2-year GRAT and "4" in the case of the decedent 4-year GRAT] years thereafter (the "Annuity Term"), Trustee shall pay to me from the net income, or (to the extent that net income is insufficient) from the principal, of the trust an annuity (the "Annuity") in an amount equal to ["51.2535" in the case of the decedent 2-year GRAT and "22.9876" in the case of the decedent 4-year GRAT] percent of the initial fair market value of the assets contributed to the trust as finally determined for federal tax purposes. The annuity will increase by twenty percent (20%) each year during the Annuity Term, * * * If I die before the expiration of the Annuity Term, the Trustee shall pay to my estate any part of the Annuity that is accrued and undistributed at my death, based on a daily proration through the date of my death. * * * The remaining trust assets are to be

administered and distributed as provided elsewhere in this agreement. * * *

**B.   Termination of Trust.**   Except as otherwise provided in this agreement, at the end of the Annuity Term, Trustee shall distribute the remaining net income, if any, and principal of the trust not required to be paid out in satisfaction of the final Annuity payment, as provided in Article Six below.

**C.   Annual Payment, Additional Contributions, Etc.** During the Annuity Term and until the final Annuity payment has been made, the following provisions will apply with respect to the trust estate:

1.   Trustee shall distribute the Annuity in at least one annual payment at the end of each taxable year, except for the taxable year in which the Annuity Term ends, when that payment will be made by the end of the Annuity Term.   If Trustee deems it to be desirable, Trustee may pay less than the full Annuity during any taxable year, but Trustee must pay any unpaid amount no later than the due date for filing the trust's income tax return for that taxable year, without regard to extensions.   In addition, Trustee may, in its sole and absolute discretion, distribute all or a portion of the Annuity in monthly, quarterly, semi-annual installments or at any other time the Trustee deems appropriate, subject to the time limitations of the prior sentence.

*    *    *    *    *    *    *

**D.   Qualified Annuity Interest.**   I intend that my retained annuity interest in this trust (and the annuity interest of my wife[1] if she survives me and receives the Annuity under paragraph E below) be a "qualified annuity interest" as defined in Code section 2702(b)(1) and Treasury Regulation Section 25.2702-3(b) and (d).   All provisions of this agreement are to be interpreted accordingly and any provision of this agreement inconsistent with that intention is to be of no effect.   In furtherance of this intention, I specifically empower Trustee to amend this trust during the Annuity Term for the sole purpose of complying with the requirements of the foregoing Code section and Treasury Regulations, and any such amendment will apply retroactively to the inception of the trust.   No power, right, or duty under this agreement will be effective

or exercisable to the extent that it would cause my retained annuity interest (or my wife's interest, if any) hereunder to fail to qualify as a "qualified annuity interest" under Code section 2702(b)(1) and Treasury Regulation Section 25.2702-3(b) and (d).

**E. Revocable Contingent Spousal Annuity Trust.** If, and only if, I die before the Annuity Term ends, my wife survives me, and I have not exercised my right to revoke all or a portion of my wife's interest under this agreement, then to the extent that I have not revoked such interest, Trustee shall hold the remaining trust assets in a marital trust for my wife. Trustee shall administer that marital trust for the lifetime of my wife as follows:

1. Trustee shall pay to my wife, or if she is deceased, to her estate, as an annuitant, the remaining Annuity which would have been paid to me if I had survived. The amount, time of payment, source of payment (except the provision for adding accumulated income to principal), proration, and adjustments of the Annuity will be the same as the provisions for payment of "qualified annuity interest" (defined in paragraph D of this Article Five) to me if I had been living. Trustee shall not make any distributions from the marital trust to or for the benefit of anyone other than my wife while my wife is living.

2. During the Annuity Term, the Trustee also shall pay from the date of my death all the income that exceeds the Annuity to or for the benefit of my wife at least annually. After the Annuity Term, Trustee shall pay the income to or for the benefit of my wife for her lifetime at least annually.

\*    \*    \*    \*    \*    \*    \*

**G. If I Die During Trust Term and My Wife Does Not Receive Annuity.** If, and only if, I die before the Annuity Term ends, and either I have revoked in whole or in part my wife's interest under this agreement or my wife does not survive me, then the trust assets subject to such revocation or the remaining trust assets in the event my wife does not survive me, as the case may be, are to be distributed to or in trust for such appointees as I shall appoint by my Will. In the

absence of such an appointment, the remaining trust assets shall be distributed to my estate.

* * * * * * *

**ARTICLE SIX:  Ultimate Distribution.**  Upon the expiration of the Annuity Term, all the remaining income and principal of this trust, if any, are to be divided into equal shares and distributed outright and free of trust to my then living children.  If a child of mine predeceases me, his or her share is to be distributed to his or her estate.

[1]The decedent GRATs state that "References to 'my wife' means [sic] NINA M. FOCARDI."

Each of the instruments establishing the Focardi GRATs has dispositive provisions similar to the quoted parts of the decedent GRATs, except that (1) the word "wife" is used in lieu of "husband", and the word "husband" is used in lieu of "wife", (2) changes have been made to gender-related pronouns, and (3) Article Five B states that "Trustee shall administer and distribute" in lieu of "Trustee shall distribute".

## Discussion

A tax is generally imposed on a taxpayer's transfer of property by gift.  See sec. 2501(a)(1).  The amount of the gift equals the fair market value of the transferred property as of the date of the gift.  See sec. 2512(a); sec. 25.2512-1, Gift Tax Regs.  Where property is transferred in trust with the donor retaining an interest in the property,[3] the value of the gift

---

[3] For purposes of sec. 2702, when a transferor retains the right to revoke a qualified annuity interest of the transferor's

(continued...)

generally is the value of the property transferred, less the value of the donor's retained interest.  See sec. 25.2512-5A(e), Gift Tax Regs.; see also sec. 25.2702-2(a)(3), Gift Tax Regs. (the term "retained" means held by the same individual both before and after the transfer).  If a gift in trust is to a family member, however, the value of the gift is determined by reference to section 2702(a)(2).  See sec. 2702(a)(1).  Section 2702(a)(2)(A) provides that the value of a retained interest that is not a qualified interest is zero (thus, the value of the gift is the value of the entire property).  Section 2702(a)(2)(B) provides that the value of a retained interest that is a qualified interest is determined under section 7520.

Section 2702(b) defines the term "qualified interest" as:

> (1) any interest which consists of the right to receive fixed amounts payable not less frequently than annually,

> (2) any interest which consists of the right to receive amounts which are payable not less frequently than annually and are a fixed percentage of the fair market value of the property in the trust (determined annually), and

---

[3](...continued)
spouse, the transferor is considered to have retained that interest for Federal gift tax purposes.  See Cook v. Commissioner, 269 F.3d 854, 858 (7th Cir. 2001), affg. 115 T.C. 15 (2000); Cook v. Commissioner, 115 T.C. at 24; sec. 25.2702-2(a)(5), Gift Tax Regs.; see also sec. 25.2702-2(d)(1), Example (6), Gift Tax Regs.  A transfer of an interest in property with respect to which there are one or more term interests is treated as a transfer of an interest in a trust. See sec. 2702(c)(1).  A term interest is an interest for life or for a term of years.  See sec. 2702(c)(3).

(3) any noncontingent remainder interest if all of the other interests in the trust consist of interests described in paragraph (1) or (2).

The regulations interpret this definition to include "a qualified annuity interest, a qualified unitrust interest, or a qualified remainder interest" and state that the "Retention of a power to revoke a qualified annuity interest (or unitrust interest) of the transferor's spouse is treated as the retention of a qualified annuity interest (or unitrust interest)."[4]  Sec. 25.2702-2(a)(5), Gift Tax Regs.  The regulations explain that a qualified annuity interest is "an irrevocable right to receive a fixed amount * * * payable to (or for the benefit of) the holder of the annuity interest" for each taxable year of the term and that a qualified unitrust interest is "an irrevocable right to receive payment periodically, but not less frequently than annually, of a fixed percentage of the net fair market value of the trust assets, determined annually."  Sec. 25.2702-3(b)(1)(i) and (c)(1)(i), Gift Tax Regs.  See generally sec. 25.2702-3(f), Gift Tax Regs., (defines the term "qualified remainder interest").  The regulations also explain that in the case of a qualified annuity interest, a fixed amount is either a set dollar amount or a set

---

[4] This latter statement reflects a taxpayer-favorable rule that was added to the regulations without comment.  The rule is not required by either the statute or the legislative history thereunder.  See 136 Cong. Rec. 30485, 30536-30540 (1990).  See generally Bogdanski, "GRAT Valuation:  The Ninth Circuit Takes its Schott", 30 Est. Plan. 304, 306 (June 2003).

portion (not to exceed 120 percent of the set portion payable in the preceding year) of the initial fair market value of the property transferred to the trust as finally determined for Federal tax purposes, and that the fixed amount must be payable periodically but not less frequently than annually.  See sec. 25.2702-3(b)(1)(ii), Gift Tax Regs.  The regulations require that the trust instrument:  (1) "prohibit distributions from the trust to or for the benefit of any person other than the holder of the qualified annuity or unitrust interest during the term of the qualified interest", sec. 25.2702-3(d)(2), Gift Tax Regs., and (2) "fix the term of the annuity or unitrust interest * * * for the life of the term holder, for a specified term of years, or for the shorter (but not the longer) of those periods", sec. 25.2702-3(d)(3), Gift Tax Regs.

Respondent argues that the spousal interests at issue were not qualified interests because:  (1) The spousal interests were contingent on the grantor's failing to survive the applicable 2- or 4-year term (in other words, the interests were not fixed and ascertainable), and (2) the spousal interests were not payable for the life of the term holder, for a term of years, or for the shorter of those periods.  As respondent sees it, each grantor's retained annuity is a qualified interest to the extent that it is payable for a term of years or the grantor's earlier death, but not to the extent it continues for the surviving spouse for the

remainder of the term or until the surviving spouse's earlier death.

Petitioners argue that the spousal interests were qualified interests in that they were "fixed and ascertainable interests existing for a specified term of years, for the life of the term holders, or for the shorter of the two."  Petitioners assert that the GRATs operated in the same manner as the GRATs in Schott v. Commissioner, 319 F.3d 1203 (9th Cir. 2003), revg. and remanding T.C. Memo. 2001-110, which the Court of Appeals for the Ninth Circuit held were qualified interests under section 2702(b). Petitioners stress that the Court of Appeals for the Ninth Circuit concluded in Schott that section 25.2702-2(d)(1), Example (7), Gift Tax Regs., establishes, contrary to respondent's position both there and here, that a spousal interest is not disqualified simply because it is contingent upon a spouse's surviving the grantor.[5]  Petitioners recognize that

_____

[5] Sec. 25.2702-2(d)(1), Example (6) and Example (7), Gift Tax Regs., states:

> Example (6).  A transfers property to an irrevocable trust, retaining the right to receive the income for 10 years.  Upon expiration of 10 years, the income of the trust is payable to A's spouse for 10 years if living.  Upon expiration of the spouse's interest, the trust terminates and the trust corpus is payable to A's child.  A retains the right to revoke the spouse's interest.  Because the transfer of property to the trust is not incomplete as to all interests in the property (i.e., A has made a completed gift of the remainder interest), section 2702 applies.

(continued...)

this Court and the Court of Appeals for the Seventh Circuit in

Cook v. Commissioner, 115 T.C. 15 (2000), affd. 269 F.3d 854 (7th

Cir. 2001), held that the GRATs there, which were similar to the

GRATs here, were not qualified interests because they were

contingent.  Petitioners argue that Cook is factually

distinguishable from this case and Schott in that the GRATs in

Cook, unlike the GRATs here and in Schott, involved a further

contingency that the grantor and spouse remain married.

We agree with respondent that the spousal interests at issue

are not qualified interests.  The spouse in no case will ever

receive any payments from the GRATs if the grantor survives the

applicable 2- or 4-year term, because the interests by their

terms are payable only if the grantor predeceases the spouse

during the applicable term.  The interests, therefore, are not

fixed and ascertainable upon the inception of the trusts, as is

---

[5](...continued)
A's power to revoke the spouse's term interest is
treated as a retained interest for purposes of section
2702.  Because no interest retained by A is a qualified
interest, the amount of the gift is the fair market
value of the property transferred to the trust.

Example (7).  The facts are the same as in Example
6, except that both the term interest retained by A and
the interest transferred to A's spouse (subject to A's
right of revocation) are qualified annuity or unitrust
interests.  The amount of the gift is the fair market
value of the property transferred to the trust reduced
by the value of both A's qualified interest and the
value of the qualified interest transferred to A's
spouse (subject to A's power to revoke).

required by the regulations.  The term of the spousal annuity, if it does become payable on account of the grantor's death within the 2- or 4-year term, also is dependent on when the grantor dies and, in particular, on how much of the term remains at the grantor's death.  Thus, neither the vesting nor the duration of the spousal interests is fixed and ascertainable upon the inception of the trusts in that both depend on the death of the grantor within a specified period.  Given that the regulations require that "The governing instrument * * * fix the term of the annuity or unitrust interest", sec. 25.2702-3(d)(3), Gift Tax Regs., we believe that the term of the spousal interests must be fixed and ascertainable upon the inception of the trusts in order to be qualified interests, see Cook v. Commissioner, 115 T.C. at 23-26.  In contrast with petitioners' reading of section 2702, we do not read section 2702 or the regulations thereunder to allow transferors such as decedent and Focardi to reduce the value of a remainder interest simply by assigning a value to a spousal interest which may never take effect.  See id.

Each spousal interest also is not a qualified interest in that it fails the duration requirement of section 25.2702-3(d)(3), Gift Tax Regs., that a term extend for the life of the term holder, for a specified term of years, or for the shorter of those periods.  The instruments establishing the GRATs stand in marked contrast to section 25.2702-2(d)(1), Example (7),

Gift Tax Regs., where the 10-year revocable spousal interest is in all events payable to the spouse beginning at the end of the grantor's 10-year term. The spousal annuity in that example meets the duration rule of section 25.2702-3(d)(3), Gift Tax Regs., in that the 10-year interests of both the grantor and the spouse are upon creation of the trust fixed and ascertainable. In other words, the spousal interest in the example is not contingent upon the grantor's death before the expiration of the initial 10-year term but is dependent on the spouse's survival of that term. If the spouse survives until the start of the spousal interest, he or she will receive that interest in all events (subject to the grantor's retained right of revocation).

Petitioners rely primarily upon Schott v. Commissioner, 319 F.3d 1203 (9th Cir. 2003), to support their view that the spousal interests at issue are qualified interests. In Schott v. Commissioner, supra at 1207, the Court of Appeals for the Ninth Circuit held that "the Commissioner's interpretation of * * * [section 25.2702-2(d)(1), Example (7), Gift Tax Regs.,] to exclude the contingency of the spouse's being alive at the time her annuity begins is unreasonable and invalid" and that a "two-life annuity, based on the lives of the grantor and spouse with a limit of fifteen years, falls 'within the class of easily valued rights' that Congress meant to qualify." The GRAT there provided for fixed annuity payments to the grantor until the earlier of

the grantor's death or 15 years.  If the grantor died before the end of the 15-year term and the grantor's spouse survived the grantor, the annuity was to be paid to the spouse for the remainder of the 15-year term.  The grantor retained the right to revoke the spouse's interest.

The case of Schott v. Commissioner, supra, does not require that we accept petitioners' conclusion that the spousal interests in issue were qualified interests.  We do not believe that the ability to easily value a spousal interest is the linchpin for a finding that the spousal interest is a qualified interest.  The legislative history under section 2702 indicates that Congress enacted section 2702 intending to "curb potential valuation abuse associated with intrafamily transfers of wealth".  Cook v. Commissioner, 269 F.3d at 858; see also 136 Cong. Rec. at 30537-30538 (1990).  The possibility of such an abuse is present where, as here, it is not certain at the outset of the trusts that payments will ever be made under a survivorship annuity.  We understand the lawmaker's intent for section 2702 is to ensure that a retained interest be fixed and ascertainable at the creation of a trust in order to reduce the value of the gift of a remainder interest.  See Cook v. Commissioner, 269 F.3d at 858. If, as petitioners claim, gifts in trust could be reduced by the value of spousal interests which are contingent and which never take effect, the retained interests would have the potential for

overvaluation, and the gift of the remainder would have the potential for undervaluation. We consider such treatment to be contrary to the lawmaker's intent for section 2702. See <u>id.</u>

This Court and the Court of Appeals for the Seventh Circuit opined on the subject matter at hand in <u>Cook v. Commissioner</u>, <u>supra</u>. The Court of Appeals for the Ninth Circuit did not acknowledge disagreement with <u>Cook</u> but distinguished <u>Cook</u> on the ground that <u>Cook</u>, unlike <u>Schott</u>, involved an expressed contingency that the spouses remain married at the time of the grantor/spouse's death. In <u>Cook</u>, the GRATs stated that an annuity would be paid to the grantor until the earlier of 5 years or the grantor's death. If the grantor survived the 5-year term, the remaining trust property would pass to a separate trust benefiting the grantor's son. If the grantor died before the end of the 5-year term and was married to the grantor's spouse at the time of death, all remaining trust property would pass to a contingent marital annuity trust, pursuant to which the grantor's spouse would receive the annuity amount for the balance of the 5-year term. Upon the earlier of the end of the 5-year term or the death of the grantor's spouse, the remaining trust assets would pass to a separate trust benefiting the grantor's son. The grantor reserved the power to revoke the successor interest of the spouse.

This Court held that the spousal interests in <u>Cook v. Commissioner</u>, <u>supra</u>, were not qualified interests because, among other reasons, they were neither fixed nor ascertainable upon the inception of the trusts. On appeal, the Court of Appeals for the Seventh Circuit agreed. That court noted that the spouse's interest might never vest and stated that allowing a reduction for tax purposes of a gift made in trust for an "ephemeral interest" would invite abuse. <u>Cook v. Commissioner</u>, 269 F.3d at 858. That court concluded that the spousal interests were contingent, and not fixed and ascertainable, because the spouse was entitled to receive the interest only if the spouse survived the grantor, and only then, if the spouse and grantor remained married. Given the fact that marital trusts are present both here and in <u>Cook</u>, and that the opinions in <u>Schott</u> did not mention a marital trust there, we believe that the decision in <u>Cook</u> applies here with more vigor and force than the decision in <u>Schott v. Commissioner</u>, 319 F.3d 1203 (9th Cir. 2003). Such is especially so given our reading of the instruments establishing the GRATs at issue to reveal a strong implicit understanding of a marriage contingency for any payment under the spousal interests.[6]

---

[6] We also note that sec. 25.2702-2(a)(5), Gift Tax Regs., requires that the successor annuitant be the grantor's spouse in order to apply the rule that the grantor's retention of a power to revoke a qualified annuity interest (or unitrust interest) is

(continued...)

Our view is further supported by the well-established principle that the judiciary should accord substantial deference to the Commissioner's interpretation of Treasury regulations, see Jewett v. Commissioner, 455 U.S. 305, 318 (1982); Ford Motor Co. v. Milhollin, 444 U.S. 555, 565-566 (1980); Blessitt v. Ret. Plan for Employees of Dixie Engine Co., 848 F.2d 1164, 1167-1168 (11th Cir. 1988) (en banc); see also Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219 (1981) ("absent some obvious repugnance to the statute, the * * * [agency's] regulation implementing this legislation should be accepted by the courts, as should the * * * [agency's] interpretation of its own regulation"),[7] and the fact that the Treasury Department has recently amended its regulations on this subject to clarify the rules applicable to revocable spousal interests and to clarify its view that section 2702 was enacted to overcome both (1) a problem concerning an uncertainty

---

[6](...continued)
the retention of a qualified annuity interest (or unitrust interest). Thus, absent an explicit marriage contingency in this case, such a contingency is implicit. See generally Kozusko, "Commentary on Schott v. Commissioner", 28 Tax Mgmt. Est., Gifts & Tr. J. 165, 166 (2003).

[7] Of course, as we have just recently noted, deference is not required to the extent that the regulation is incompatible with the plain meaning of the text of the statute that it purports to construe. See Swallows Holding, Ltd. v. Commissioner, 126 T.C. ___ (2006); see also Natl. Muffler Dealers Association v. United States, 440 U.S. 472, 477 (1979) (interpretative Federal tax regulation is reasonable only if it "harmonizes with the plain language of the statute, its origin, and its purpose").

in valuation and (2) an inaccuracy in valuation caused by an uncertainty that a survivorship interest will never be paid.  See T.D. 9181, 70 Fed. Reg. 9222 (Feb. 25, 2005).  As to the requirement of substantial deference, such a requirement would appear to be at its strongest here, where the regulation in question (i.e., the rule that allows a retention of a right to revoke not to be considered a retention for purposes of section 2702) does not appear in the statute or in its legislative history, but is a creation of the Treasury Department.  As to the recent amendments to the regulations, those regulations state specifically that revocable spousal interests such as those here are not qualified interests.[8]  They also include provisions that (1) define the word "holder" to mean the person to whom the qualified interest is payable during the term, see current sec. 25.2702-2(a)(5), Gift Tax Regs.; (2) require that a spousal interest subject to a revocation power independently meet the regulatory requirements for a qualified interest, but for the transferor's power to revoke, see current sec. 25.2702-2(a)(6), Gift Tax Regs.; and (3) state that a qualified interest may only be contingent on the survival of the holder, see current sec. 25.2702-3(d)(2), Gift Tax Regs.  The amendments also add to the regulations a new example that illustrates a revocable spousal

---

[8] As mentioned supra note 2, those amendments are not applicable here in that they apply to trusts created on or after July 26, 2004.

interest that is a qualified interest.  See current section 25.2702-3(e), Example (8), Gift Tax Regs.  This new example is consistent with section 25.2702-2(d)(1), Example (7), Gift Tax Regs., on which respondent relies here.  A second example added to the regulations; i.e., current section 25.2702-3(e), Example (9), Gift Tax Regs., further illustrates that revocable spousal interests such as those here are not qualified interests.  New Example (9) states:

> Example 9.  (i)  A transfers property to an irrevocable trust, retaining the right to receive 6 percent of the initial net fair market value of the trust property for 10 years, or until A's prior death. If A survives the 10-year term, the trust terminates and the trust corpus is payable to A's child.  If A dies prior to the expiration of the 10-year term, the annuity is payable to B, A's spouse, if then living, for the balance of the 10-year term, or until B's prior death.  A retains the right to revoke B's interest. Upon expiration of B's interest (or upon A's death if A revokes B's interest or if B predeceases A), the trust terminates and the trust corpus is payable to A's child.  As is the case in Example 8, A's retained annuity interest (A's right to receive the annuity for 10 years, or until A's prior death) is a qualified annuity interest under paragraphs (b) and (d) of this section.  However, B's interest does not meet the requirements of paragraph (d) of this section.  The term of B's annuity is not fixed and ascertainable at the creation of the trust, because it is not payable for the life of B, a specified term of years, or for the shorter of those periods.  Rather, B's annuity is payable for an unspecified period that will depend upon the number of years left in the original term after A's death.  Further, B's annuity is payable only if A dies prior to the expiration of the 10-year term.  Thus, payment of B's annuity is not dependent solely on B's survival, but rather is dependent on A's failure to survive.

(ii)  Accordingly, the amount of the gift is the fair market value of the property transferred to the trust reduced by the value of A's qualified interest (A's right to receive the stated annuity for 10 years or until A's prior death).  B's interest is not a qualified interest and is thus valued at zero under section 2702.

Petitioners argue alternatively that this Court, if we conclude that the spousal interests in the GRATs are not qualified interests, must disregard those interests in that the instruments establishing the GRATs state as much.  Petitioners point the Court to Article Five D, which states that "No power, right, or duty under the agreement will be effective or exercisable to the extent that it would cause my retained annuity interest (or my wife's [husband's] interest, if any) hereunder to fail to qualify as a 'qualified annuity interest' under I.R.C. § 2702(b)(1)".  Petitioners assert that the quoted text operates to invalidate the spousal interests in that those interests are not qualified interests.  Petitioners conclude that each GRAT is now simply a GRAT for a set term of either 2 or 4 years, as the case may be, and should be treated as such.

We reject petitioners' alternative argument.  We do not believe that petitioners are entitled at this time to treat each GRAT in issue as one of a set term of years simply because the GRATs state that our determination that the spousal interests are not qualified interests essentially means that the spousal gift is revoked.  Such a "savings clause" is ineffective for Federal

transfer tax purposes, and we give it no respect.  See

Commissioner v. Procter, 142 F.2d 824 (4th Cir. 1944); Ward v.

Commissioner, 87 T.C. 78 (1986); Harwood v. Commissioner, 82 T.C.

239 (1984), affd. without published opinion 786 F.2d 1174 (9th

Cir. 1986).  See generally Rev. Rul. 65-144, 1965-1 C.B. 442.

We hold for respondent.  We have considered all arguments by

petitioners for a contrary holding and find those arguments not

discussed herein to be without merit.  To reflect the

arbitrator's valuation of the Great Bay stock,

Decisions will be entered

under Rule 155.